UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARIA RODRIGUEZ, | ) |
| Plaintiff, | ) Case No. CV 14-4941 (AJW) |
| v. | ) MEMORANDUM OF DECISION |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

The court has considered the testimony and the exhibits admitted during the non-jury trial.

The starting point for analysis is the following facts, which were admitted by both parties in the pretrial conference order:

    a.    The USPS operates a facility located at 1920 Pacific Avenue, Long Beach, California 90802.

    b.    There are two customer entrances to the Pacific Avenue post office: (1) one entrance leading directly to where the post office boxes are located and (2) one entrance leading directly to the customer service area.

    c.    Plaintiff has maintained a post office box at the Pacific Avenue post office since October 6, 2011.

    d.    Before January 17, 2013, plaintiff would go to the Pacific

|||||
|---|---|---|---|
|1| |  | Avenue post office about one or two times a week to pick up |
|2| |  | her mail. |
|3| | e. | Before January 17, 2013, plaintiff never experienced any |
|4| |  | problem with the mat at the entrance to the post office |
|5| |  | boxes and never reported any issues with the mat to any |
|6| |  | postal employee. |
|7| | f. | Plaintiff is unaware of anyone else tripping over the mat at |
|8| |  | the post office. |
|9| | g. | On January 17, 2013, plaintiff entered the Pacific Avenue |
|10| |  | post office through the door that led directly to the post |
|11| |  | office boxes. |
|12| | h. | At the time, plaintiff was wearing a medical walking boot |
|13| |  | ("boot") on her right leg and walking with a cane in her |
|14| |  | right hand. |
|15| | i. | Plaintiff required these medical devices because she had |
|16| |  | injured her right ankle in September 2012 after slipping and |
|17| |  | falling in a hotel bathroom in Mexico. |
|18| | j. | Plaintiff entered the USPS building with her son, Jesus, who |
|19| |  | suffers from schizophrenia. |
|20| | k. | In order to enter the building, plaintiff had to pass |
|21| |  | through a glass door. |
|22| | l. | There was a floor mat placed on the ground at the threshold, |
|23| |  | located inside of the post office. |
|24| | m. | Plaintiff did not observe the floor mat upon entering the |
|25| |  | building. |
|26| | n. | After passing through the entrance and over the mat without |
|27| |  | incident, plaintiff and her son retrieved her mail from her |
|28| |  | post office box. |

|   |    |                                                                                          |
|---|----|------------------------------------------------------------------------------------------|
| o.| In order to exit the facility, plaintiff then headed toward the same door from which she entered. |
| p.| Plaintiff was talking and looking at her son as she walked from her post office box to the exit. |
| q.| Plaintiff's son opened the door so Plaintiff could exit. |
| r.| Before exiting, plaintiff fell inside the post office. |
| s.| Plaintiff did not notice the condition of the mat before she fell because she did not pay attention to it. |
| t.| The first time she noticed the mat was after she fell. |
| u.| Prior to falling, plaintiff never felt her foot getting caught underneath or on the mat before she fell. |
| v.| When plaintiff fell, no part of her body crossed the threshold of the doorway. |
| w.| Plaintiff fell on her hands and knees on top of the mat. |
| x.| Plaintiff alleges the ripples in the mat as depicted in these photographs[1] caused her to trip and fall.[2] |
| y.| Plaintiff did not notify anyone at the post office that she had tripped over the mat until she filed her administrative tort claim in July 2013, six months after the accident had occurred. |

[See Docket No. ("Dkt. No.") 84, Joint Pretrial Order, at 2-3].

Other facts are apparent from the evidence presented at trial.

z. Plaintiff fell in a park on July 2012, and again in a hotel bathroom in September 2012. [Reporter's Transcript of Trial

---

[1] The court infers that the phrase "these photographs" refers to the photographs contained in Exhibit ("Ex.") 1.

[2] This, of course, is merely a contention, not a fact.

1  ("Tr.") 81-82, 107].

2  aa. Plaintiff had switched to the boot from a cast about two
3  weeks prior to the incident. [Tr. 82-83, 109].

4  bb. This was plaintiff's "first time walking with a medical
5  boot." [Tr. 108].

6  cc. Plaintiff used a cane and grabbed the arm of her son or
7  daughter for stability while walking [Tr. 83].

8  dd. Plaintiff was not paying attention to the mat because she
9  was talking to her son. [Tr. 110].

Plaintiff alleges two claims against defendant United States: negligence and premises liability. [Dkt. No. 84, at 3-4].

Federal subject matter jurisdiction over this case exists. 28 U.S. § 1346(b).

California substantive law applies. See 28 U.S.C. § 1346(b).

The elements of a negligence claim are: (1) the defendant was negligent; (2) the plaintiff was harmed; and (3) the defendant's negligence was a substantial factor in causing the plaintiff's harm. Judicial Council of California, Civil Jury Instructions ("CACI") 400 (2016).

The elements of a premises liability claim are: (1) the defendant owned, leased, occupied, or controlled the property; (2) the defendant was negligent in the use or maintenance of the property; (3) the plaintiff was harmed; and (4) the defendant's negligence was a substantial factor in causing the plaintiff's harm. CACI 1000.

Plaintiff bears the burden of proving the elements of her claims by a preponderance of the evidence. CACI 200.

The crucial question is: What caused plaintiff's fall? Did plaintiff trip on the mat – or, more precisely, on the particular part

4

of the mat which plaintiff claims was raised or curled as a result of permanent deformation – or did she fall in some other way? On this point, the evidence is unsatisfying.

Plaintiff's daughter did not witness plaintiff's fall [Tr. 60]. No one other than plaintiff (apart from plaintiff's expert witness, Burns, whose non-percipient testimony will be addressed below) testified as a percipient witness about how plaintiff fell (i.e., not her son (who was with her when she fell), not other post office customers, not postal employees, etc.).

At trial, plaintiff testified that she tripped on the mat:

- "Of how I fell, the only thing I remember is that I tripped on the mat that was at the entrance." [Tr. 111].
- "Well, I'm sure that it was the mat that got into my boot, and um, when I walked, it pulled and that's when I fell." [Tr. 87].
- "At the moment that I walked, I felt the boot and the mat put like inside the boot and that's when I fell." [Tr. 91].
- "I felt something that was bothering me at the moment that I took the step. I was unable to avoid the fall." [Tr. 91].

During her deposition, however, plaintiff testified that she either did not know or could not remember why she fell:

- "I don't remember how I fell. I felt like a lot of things got erased." [Tr. 113].
- "I'm not sure a hundred percent how I fell. It was all very fast." [Tr. 113].
- Question: "And do you have an idea of how you fell from your own recollection without anybody telling you?"
  Answer: "No. It was something very surprising – sudden. I

5

        just felt the pain and discomfort in my head. No. The truth is I don't – I didn't imagine that it was an accident." [Tr. 114].

- Question: "Ms. Rodriguez, you never felt the floor mat make contact with your foot or boot until after you fell?"

  Answer: "Up until what I can remember the only thing that I felt at the moment; is when I felt something got stuck on my foot...." [Tr. 114].

- Question: "But the question is that you never felt the floor mat make contact with your foot or boot until after you fell?"

  Answer: "Exactly." [Tr. 114].

    In sum, plaintiff's testimony about whether she tripped on the mat is inconsistent. At trial she testified both that she tripped on the mat [Tr. 87, 91, 111] and that she did not. [Tr. 114]. During her deposition, she testified that she did not know or could not remember how she fell. [Tr. 113, 114]. Moreover, even when plaintiff said that the mat was somehow involved in her fall, she did not specify whether she tripped on a flat part of the mat or on the allegedly raised or curled part of the mat. On this crucial point – that is, how or why she fell – plaintiff's testimony is unconvincing. Further, some of plaintiff's trial testimony is inconsistent with what the parties have agreed upon in the Joint Pretrial Order, where they stipulated that, "The following facts are admitted and require no proof: .... U. Prior to falling, plaintiff never felt her foot getting caught underneath or on the mat before she fell." [Dkt. No. 84, at 2-3]. The court reconciles that inconsistency in favor of the stipulated fact contained in the Joint Pretrial Order.

Considering all the circumstances – including plaintiff's history of falling (twice during the six months preceding the incident, even when she was not wearing a boot [Tr. 81-82, 108-109]), plaintiff's inexperience walking with a boot, plaintiff's need to rely on a cane or others for stability, plaintiff's inattention to where she was walking while conversing with her son, plaintiff's poor and inconsistent recollection, etc. – it is unclear whether plaintiff fell because she tripped on a flat undeformed part of the mat, tripped on an allegedly raised or curled part of the mat, lost her balance because she scuffed or dragged the boot on the floor, or for some other reason not attributable to anything defendant did or failed to do.

The testimony of plaintiff's expert, Burns, concerning what actually caused plaintiff to fall, tries – unsuccessfully – to fill this gap. Assuming that it is admissible, Burns' second opinion – that "the unsafe condition of the mat caused the subject incident" [Tr. 28-29] – is not supported by any evidence. It rests on three things: (1) plaintiff's testimony that "after the fall she saw that the mat was wavy where her foot got caught"; (2) "the medical records are pretty clear that – and consistent that Ms. Rodriguez tripped and fell on a mat"; and (3) "the mechanics of the fall as described by Ms. Rodriguez are consistent with someone tripping and falling on a mat." [Tr. 28-29; see also Tr. 35]. Part of the basis for that opinion, specifically (1) and (3), rests on plaintiff's testimony, which – as previously discussed – is unreliable. And as to (2), Burns never explains how – at least apart from the recitation of statements allegedly made by plaintiff to medical personnel who did not (of course) observe the

7

incident[3] – the medical records demonstrate that plaintiff tripped on the mat rather than falling in some other way. Further, even Burns conceded in his deposition that it is possible that plaintiff tripped on something other than the mat:

> Question: "The question is that the mechanics are consistent with her not tripping on the mat; correct?" Answer: "It's possible that she tripped on her boot right in the area where the mat was located, correct."

[Tr. 57]. Finally, even accepting Burns' opinion that the mat was a trip hazard of which defendant should have been aware because it had a raised or curled edge as a result of permanent deformation – an opinion which itself is questionable[4] – Burns has no plausible basis

---

[3] For example, one of plaintiff's physicians says: "According to the patient, she was in the post office picking up mail with her son and as she was leaving her toe became stuck under an old carpet at the exit, which cause her to fall on the floor." [Ex. 5].

[4] The basis for the other opinions of plaintiff's expert also are suspect. Burns never inspected the mat involved in the incident. [Tr. 37]. Instead he relied on pdfs of photographs taken by plaintiff's daughter 1-2 days after the incident. [Tr. 38]. There is no reliable evidence, however, that the mat plaintiff's daughter photographed was the same mat that was involved in the incident. Burns subsequently examined the premises, including a mat, and took some photographs and measurements, but he did not do so until June 12, 2015, approximately 30 months after the incident. [Tr. 19, 42]. Burns assumed that the mat he photographed and measured was not the same mat that was involved in the incident [Tr. 20], but many of his opinions rest on the assumption that the mat he examined two and one-half years later was nevertheless substantially similar to the mat involved in the incident [Tr. 39-40], yet there is no evidence of that. Finally, the inferences drawn by Burns about the permanent deformation of the mat are unpersuasive because they are not based on any tests or peer-reviewed scientific literature. In fact, Burns has never published anything. [Tr. 49-50]. Moreover, although Burns said that his conclusion that the buckling or rippling of the mat depicted in Ex. 1 could only be caused by permanent deformation "absolutely" was

for his opinion that plaintiff actually tripped on that particular part of the mat. Burns's second opinion then, rests on an unsteady foundation and fails to supply the missing proof of causation.

For the foregoing reasons, plaintiff has not proved by a preponderance of the evidence that anything that defendant did or failed to do was a substantial factor in causing either her fall or her injuries. Therefore, plaintiff is not entitled to recover on her claims.

IT IS SO ORDERED.

Dated: March 6, 2017

_____
Andrew J. Wistrich
United States Magistrate Judge

---

"generally accepted by [his] peers," he was unable to identify a single one. [Tr. 49]. Since none of Burns's other opinions address the key issue, however, the court need not address them in detail.